Leonard R. Nourie v. Commissioner.
Nourie v. Commissioner
Docket No. 12853.
United States Tax Court
1948 Tax Ct. Memo LEXIS 126; 7 T.C.M. (CCH) 550; T.C.M. (RIA) 48147; July 30, 1948
*126 During the years 1942 and 1943 petitioner was an engineer and machinery broker, designing, selling and installing equipment for fabricating sheet metal and sheet steel products. During those years petitioner claimed deductions as ordinary and necessary business expenses moneys expended for traveling and entertaining. He did not keep an accurate account of the amounts and the items for which such expenditures were made. Held, that the major portion of such expenditures was made for business purposes. Held, further, that the exact amount of such expenditures for business purposes was not determinable from the evidence but that an allocation of the expenditures between business and personal expenses can properly be made. Cohan v. Commissioner, 39 Fed. (2d) 540. Louis Caplan, Esq., 1124 Frick Bldg., Pittsburgh, Pa., for the petitioner. Albert W. Dickinson, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: Respondent determined a deficiency in petitioner's income tax for 1943 in the amount of $7,989.76. The deficiency results from adjustments affecting his income for the calendar years 1942 and 1943. Due to the forgiveness feature of the Current Tax *127 Payment Act of 1943 the deficiency relates to the latter year. Certain issues raised by the pleadings are not now in controversy. The only question for determination is: Were the amounts included in deductions claimed in petitioner's 1942 and 1943 income tax returns as "Traveling and Entertaining" expenses in fact ordinary and necessary business expenses? Petitioner's returns for the taxable years 1942 and 1943 were filed with the collector of internal revenue for the twenty-third district of Pennsylvania at Pittsburgh. Findings of Fact Petitioner resides at 717 North Meadowcroft Avenue, Mt. Lebanon, Pennsylvania. During 1942 and 1943 he was doing business as an engineer and machinery broker, designing, selling and installing equipment for fabricating sheet metal and sheet steel products. His principal place of business during those years, was 1229 Park Building, Pittsburgh, Pennsylvania. In 1942 and 1943 petitioner was engaged primarily in war work. His method of operation was as follows: When a manufacturer developed a product which he wished to produce in large quantities, he would submit drawings or a sample of the product to petitioner. Petitioner, in turn, would design the machinery *128 which he thought best adaptable for the production of the particular item shown to him and sell such machinery to the manufacturer. Petitioner then supervised the installation of the equipment which he designed for the production of the product. In the installation of the production machinery petitioner some times used his own men to assist him; other times he used personnel employed by the manufacturer. The tools and equipment which petitioner designed for the production of the desired product and sold to the producer were manufactured for him by firms located in various parts of the country. During 1942 and 1943 petitioner spent roughly 50 per cent of his time outside of Pittsburgh in connection with his business. Many times due to the confidential nature of the product for which he was requested to design production machinery, he found it necessary to draw up his plans outside of his office in the plant which was to produce the material. In connection with designing and selling production machinery, petitioner, during 1942 and 1943, traveled to Youngstown, Beaver Falls, Salem and Steubenville, Ohio; Sharon, Johnstown, Ridgway, Emporium, Mercer and New Kensington, Pennsylvania; *129 Wheeling and New Cumberland, West Virginia; New Jersey, and Louisville, Kentucky. In connection with the fabrication of the production machinery which he designed and sold during 1942 and 1943, petitioner traveled to Milwaukee, Wisconsin, Minneapolis, Minnesota, Chicago, Illinois, several times, Warren, Ohio, and Syracuse, New York. In 1942 and 1943 petitioner claimed deductions for "Traveling and Entertaining" in the amounts of $7,185.10 and $12,109.53, respectively. Of these amounts $360.85 and $665.53, respectively, which respondent allowed, represented items for expenses for men in petitioner's employ incurred by them where they were sent out on projects alone. The remaining $6,824.25 and $11,444 for 1942 and 1943, respectively, were reported by petitioner as his "Traveling and Entertaining" expenses. Petitioner had more expenses in 1943 than in 1942 because during the former year he had a greater number of contracts which required that he do more traveling in that year. Petitioner's bookkeeper kept a record on ledger sheets in both 1942 and 1943 of moneys drawn by petitioner for business expenses. Her method of recording the "Traveling and Entertaining" expenses was as follows: *130 Petitioner's bookkeeper would give him $400 on Monday morning of each week. When this amount reached a point below which he considered necessary for his needs, he would obtain additional funds from his bookkeeper and she would then record on the ledger sheet the difference between what he started with on Monday morning and what he had left. The sums so placed on the ledger sheet were not identified except as to the date reported by petitioner to his bookkeeper. For the year 1942 there were 46 separate sums listed on the ledger sheet; for the year 1943 there were 45 separate items so listed. Certain of those expenses were specifically associated with specific items of expense by petitioner's testimony as follows: 1942
Amount
To Whom Paid
Explanation
$ 20.00
Engineering Society of Western Pennsylvania.
Dues.
491.91 *
Pittsburgh Athletic Association.
Meals and entertainment of clients.
50.85
Wm. Penn Hotel, Pittsburgh, Pa.
Expenses incurred in connection with
annual banquet of Engineering Society.
15.00
American Welding Society.
Dues.
131.71
Bismarck Hotel, Chicago, Ill.
Expenses incurred for room, meals for
petitioner and clients, conference room
$ 709.47
used by petitioner on 2 trips to Chicago.
1943
$ 521.74 *
Pittsburgh Athletic Association.
Meals and entertainment of clients.
20.00
Engineering Society of Western Pennsylvania.
Dues.
40.00
Engineering Society of Western Pennsylvania.
4 tickets to annual banquet for petitioner
and employees.
148.83
D. C. Verson
Petitioner's share of hotel expenses in-
curred in connection with business trip.
469.38 **
Bismarck Hotel, Chicago, Ill.
Hotel expenses, including petitioner's
room, conference room, meals for peti-
$1,224.90
tioner and clients incurred on 3 different
business trips to Chicago.
* *131 1942 - 12 different sums. ** 1942 - 2 items. * 1943 - 11 different sums. ** 1943 - 3 different sums.
Most of the remaining amounts, not specifically identified, were spent by petitioner for railway fares, airplane tickets, taxi fares, tips, rooms, meals, transportation of employees who traveled with him, and telephone calls, all of which expenses were incurred in connection with his business. Several times he paid for the hotel rooms and meals of representatives of various firms who came to see him in connection with particular production problems. Some expenditures included under "Traveling and Entertaining" were made for items unrelated to that type of expense, such as railway fares for employees who traveled with him on business trips, tools and machine parts needed in the installation of a production line, payments to men he wanted to keep overtime to finish a particular job, and Christmas presents for his customers. All of the above mentioned types of expenditures were incurred by petitioner for business purposes. A minor but indeterminable portion of the moneys entered on the ledger sheets as business expenses was used for other than business purposes. In his notice of deficiency *132 under "Explanation of Adjustments" respondent stated as follows: "(1) It is determined that the deduction of $7,185.10 claimed in your 1942 income tax return for traveling and entertainment expenses is excessive by the amount of $6,824.25. * * *
"(a)(1). It is determined that the deduction of $12,109.53 claimed in your 1943 income tax return for travelling and entertainment expenses is excessive by the amount of $11,444.00." A reasonable approximation of the amounts of the claimed deductions in question which were incurred as ordinary and necessary business expenses is 90 per cent thereof. Opinion The respondent contends that all of the amounts of $6,824.25 and $11,444 included in deductions claimed by petitioner in his 1942 and 1943 income tax returns, respectively, as "Traveling and Entertaining" expenses, should be disallowed because they "do not in fact represent ordinary and necessary business expense." We do not agree. It should be noted, first, that even respondent does not seriously contend that all of the amounts in dispute should be disallowed. He argues in one place in brief that these sums did not represent ordinary and necessary expenses; yet in another section he states: *133 "Respondent does not doubt that petitioner was a very busy man in the years 1942 and 1943. Respondent does not doubt that in those years petitioner made some cash outlays for miscellaneous business activities, including travel and entertainment. But in order for petitioner to be allowed deductions anywhere near approaching those claimed, he must surely be required to come forward with evidence more concrete than that appearing in the record." It is true that petitioner has presented inexact proof of his "Traveling and Entertaining" expenses. Only a relatively small percentage of the sums so expended were associated with particular items of expense. No receipts or vouchers were presented in evidence. The very nature of petitioner's business during the years 1942 and 1943, however, required that he incur traveling, entertaining and other business expenses. During those years he traveled for business purposes to numerous cities located considerable distances from Pittsburgh, in Pennsylvania, New York, Ohio, West Virginia, Kentucky, Wisconsin, Minnesota and Illinois. He spent approximately 50 per cent of his time during the years in question in a travel status for business reasons. During *134 his journeys he expended moneys for such business expenses as railway fares, airplane tickets, taxi fares, long distance telephone calls, conference rooms and entertainment of customers, both present and prospective. He also entertained numerous customers in Pittsburgh. In addition, under this heading were included expenditures for items unrelated to traveling and entertainment, such as railway fares for employees who traveled with him on business trips, dues for professional societies, small machine parts and tools which he needed while installing production equipment and Christmas presents for customers. These deductions may not be disallowed merely because petitioner has tagged them improperly. Since petitioner did not keep accounts from which it can be accurately determined what amount of the claimed deductions was expended for business purposes and since we are also convinced that a minor portion thereof was not so expended we have found by approximation that 90 per cent of the claimed deductions represent expenditures for business purposes. We appreciate that such finding does not represent the mathematically correct allocation of the expenditures in question between those made *135 for business purposes and those made for personal expenses. But it appears to us that it approaches as nearly the correct allocation of such expenses as we are able to make from the evidence. . The Circuit Court of Appeals for the Second Circuit in the Cohan case, supra, stated: "* * * Absolute certainty in such matters [determining the amount of ordinary and necessary business expenses where inadequate records are kept] is usually impossible and is not necessary; the Board should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making. But to allow nothing at all appears to us inconsistent with saying that something was spent * * * It is not fatal that the result will inevitably be speculative; many important decisions must be such. * * *" We have determined, therefore, that 90 per cent of the "Traveling and Entertaining" expenses incurred by petitioner during each of the taxable years 1942 and 1943 were ordinary and necessary business expenses, and, therefore, are deductible for income tax purposes. Decision will be entered under Rule 50.